IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS (SMART) LOCAL UNION NO. 36,<br><br>  Plaintiff,<br><br>  v.<br><br>H & H SHEET METAL & CONTRACTING COMPANY,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  4:21-cv-00381-AGF<br>)<br>)<br>)<br>)<br>)  |

## MEMORANDUM AND ORDER

This Matter is before the Court upon Plaintiff, the Trustees of the International Association of Sheet Metal, Air, Rail, and Transportation Workers (SMART) Local Union No. 36 Pension Plan's (the "Pension Plan") Motion for Summary Judgment. (Doc. No. 24).  The Pension Plan filed this action against Defendant H & H Sheet Metal & Contracting Company seeking to collect a withdrawal liability assessment under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq*. ("MPPAA").  Plaintiff claims H & H owes it $1,876,896.00 in outstanding withdrawal liability, $352,856.45 in interest, and $1,200.00 in liquidated damages.  The motion is fully briefed and ready for disposition.  For the reasons set forth, the motion for summary judgment will be granted.

**Facts**

The following facts are uncontroverted, unless otherwise noted.[1] The Pension Plan is a multiemployer pension plan, as defined by §§ 3(2)(i) and (37) of ERISA, 29 U.S.C. § 1002(2) and (37). H & H is an employer for the purposes of ERISA. (Doc. No. 26, Plaintiff's Statement of Uncontroverted Material Facts ("SUMF"), at ¶ 6). Pursuant to a Labor Agreement with SMART Local Union No. 36, H & H participated in the Pension Plan from January 9, 2001 through March 2, 2020. *Id*. The Pension Plan contends that H & H withdrew from the plan on March 3, 2020 when it ceased contributions, but continued to work in the jurisdiction of Local Union No. 36. *Id*. at ¶ 7. H & H claims that it ceased operations in 2020 and did not continue to work in the jurisdiction of the union, although it admits that it ceased payments into the plan, as it lacked the funds. (Doc. No. 31 at ¶ 23).

---

[1] In its Statement of Material Facts and Response in Opposition to the Motion for Summary Judgment, H & H outlines the history of the company, its owners, its financial troubles, and its past dealings with SMART Local Union No. 36. The Pension Plan objects to the majority of the facts contained in the statement as immaterial. For example, H & H states SMART Local Union No. 36 sent "threatening correspondence" to the company—a demand letter explaining H & H has failed to make contributions to the union's local funds and stating that if the payments are not made, the union will sue for damages. (Doc. Nos. 31 at 3, 31-3 at 1). H & H also attaches a copy of the agreement settling those claims. (Doc. No. 31-4).
   The Court notes that the single claim in this matter is related to H & H's failure to pay its withdrawal liability, while the demand letter and settlement agreement referenced by H & H are related to its failure to pay its regular dues to the union's local funds. H & H does not explain how these documents or allegations relate to this matter, nor can the Court discern any relationship.

On December 2, 2020, the Pension Plan sent H & H a Notice and Demand for Payment of Withdrawal Liability (the "Assessment"), informing H & H that withdrawal liability in the amount of $1,876,896.00 was due.  SUMF at ¶ 8.  H & H received the assessment but did not pay the liability or request arbitration.  *Id*. at ¶¶ 9, 10, 15.  Pursuant to the Pension Plan's Withdrawal Liability Regulation, H & H was required to initiate arbitration within 90 days of receiving the assessment.  *Id*. at ¶ 14.  H & H has not made any withdrawal payments.  In addition to the withdrawal liability, the Labor Agreement provides that H & H shall pay interest and liquidated damages.  *Id*. at ¶ 19.  The Administrative Manager of the Pension Plan calculated that H & H owed $352,856.45 in interest and $1,200.00 in liquidated damages.  *Id*. at ¶ 20.

**Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party.  *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988).  Self-

serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

**Discussion**

    a. **ERISA and MPPAA—Statutory scheme**

ERISA was enacted in 1974 to ensure that employees who were promised pension benefits would receive those benefits on retirement. *PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 456-57 (M.D. Tenn. 2011) (citing *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988)). ERISA was amended in 1980 by the MPPAA, which responded to the problem of employers withdrawing from multiemployer pension plans when diminishing overall participation forced remaining employers to contribute at a higher level in order to meet the funds' past liabilities. *Id*. To address this problem, "[t]he MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits." *Id*.

Relevant to this case, "complete withdrawal" is "when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). The amount of an employer's withdrawal liability is determined by a plan's trustees, who must show the employer was obligated to contribute to the plan under a collective bargaining agreement and that the employer has withdrawn from the plan. 29 U.S.C. §§ 1382, 1392(a). The amount of the withdrawal liability is determined according to a formula provided in 29

U.S.C. §§ 1381(b) and 1391.  Once the employer's withdrawal liability is determined, the plan sponsor must, "as soon as practicable," notify the employer of the amount of liability and make a demand for payment. 29 U.S.C. §§ 1382, 1399(b)(1).

After receiving notice of withdrawal liability, the employer has ninety days to (i) request that the plan sponsor review "any specific matter" regarding the liability and payment schedule determination, (ii) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," and (iii) provide the plan sponsor additional information.  29 U.S.C. § 1399(b)(2)(A).  If there is "any dispute ... concerning a determination made under sections 1381 through 1399 of this title," either party may initiate arbitration "within a 60-day period after the earlier of (A) the date of notification [of the plan sponsor's response to the request for review] ..., or (B) 120 days after the date of the employer's request [for review]." 29 U.S.C. § 1401(a)(1). Alternatively, the parties may jointly initiate arbitration within 180 days of the initial demand for payment. *Id*.

These provisions set up a system in which "[arbitration] is the preferred method of dispute resolution ... and normally the initial step preceding judicial intervention." *PACE Indus.*, 805 F. Supp. 2d at 457 (quoting *Mason & Dixon Tank Lines*, 852 F.2d at 163). Interim payments must be made during the pendency of any such dispute, 29 U.S.C. § 1399(c)(2), and if arbitration is not initiated, then the liability amount is "due and owing" pursuant to the schedule determined by the plan sponsor and may be collected by an action in a court of competent jurisdiction, 29 U.S.C. § 1401(b)(1).  The employer's failure to make a payment when due, and further failure to cure that delinquency,

5

constitutes "default," and entitles the plan sponsor to the full and immediate payment of the outstanding amount of withdrawal liability plus accrued interest. 29 U.S.C. § 1399(c)(5).

    **b. Arguments of the Parties**

In a withdrawal liability collection case, a plan needs to show: "(1) the [plan] was a multiemployer pension plan ... and the Defendants were an employer for the purposes of ERISA, (2) the [plan] notified the Defendants of their assessed liability, and (3) Defendants failed to timely initiate arbitration." *Local Union 513 Pension Fund v. Susie's Constr., Inc.,* No. 4:15-cv-1322-JAR, 2016 WL 4036908, at *3 (E.D. Mo. July 28, 2016). The failure to initiate arbitration operates as a waiver of any defenses concerning the fact and amount of withdrawal liability. *PACE Indus.*, 805 F. Supp. 2d at 465 (citing cases); *Susie's Constr.*, 2016 WL 4036908, at *3. It is undisputed that the Pension Plan is a multiemployer pension plan, H & H is an employer for the purposes of ERISA, the Pension Plan notified H & H if its assessed liability, and H & H failed to timely initiate arbitration. As such, the Pension Plan argues it is entitled to summary judgment.

H & H claims the withdrawal liability was inaccurately calculated in light of its insolvency. H & H notes that "[i]t was a small family business never employing more than 10 to 15 workers depending on business, with payroll around $15,000.00 per week," a miniscule amount compared to the withdrawal liability of over 1.8 million dollars. (Doc. No. 29 at 2). Although the Court notes the apparent inequity in the size of the withdrawal liability, the time to raise this argument was during arbitration. By failing to

6

initiate arbitration, H & H waived this defense. *Susie's Constr.*, 2016 WL 4036908, at *3. H & H acknowledges the general rule that failure to initiate arbitration waives defenses to the amount and existence of liability but claims an exception should apply here. H & H relies on *Findlay Truck Line*, a decision by the Sixth Circuit holding arbitration is not required under "three specific circumstances": 1) a facial constitutional attack; 2) a verifiable claim that arbitration would lead to irreparable injury; and 3) a determination of whether a company is an "employer" within the meaning of the MPPAA. *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 755 (6th Cir. 2013). However, none of these specific circumstances are applicable here. H & H has not alleged a constitutional challenge, and it concedes that it is an "employer" within the meaning of the MPPAA.

Furthermore, H & H has not shown arbitration would lead to an irreparable injury. Although it claims it was unable to afford arbitration, this alone is not an irreparable injury. *See Terson Co. v. Pension Benefit Guar. Corp.*, 565 F. Supp. 203, 207 (N.D. Ill. 1982) (Finding the expenditure of substantial time, money, and effort to engage in arbitration pursuant to the MPPAA does not constitute irreparable harm); *New York State Teamsters Conf. Pension & Ret. Fund v. McNicholas Transp. Co.*, 658 F. Supp. 1469, 1475 (N.D.N.Y. 1987) (finding financial burden of making interim monthly payments towards withdrawal liability under MPPAA, without more, does not constitute irreparable harm). Accordingly, the Court concludes that arbitration was required and H & H's failure to initiate arbitration operates as a waiver of its defenses concerning the amount of the withdrawal liability.

In addition to contesting the withdrawal liability, H & H argues the interest and liquidated damages are improperly calculated as they do not account for its insolvency. This is, in effect, a second attempt to challenge the withdrawal liability because interest and liquidated damages are based on the underlying withdrawal liability.  H & H cannot challenge the damages as it failed to initiate arbitration.  H & H concedes the remaining elements of the Pension Plan's claim.  As such, there is no genuine issue of material fact and the Pension Plan is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**.  (Doc. No. 24).  Judgment shall be entered against Defendant and in favor of Plaintiff in the amount of   $1,876,896.00 in outstanding withdrawal liability, $352,856.45 in interest, and $1,200.00 in liquidated damages.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2022.